IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BYRON JONES, FRED JONES, JAMES JACKSON, KENNETH TODD BOSTON, and all others similarly situated, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-01467-B |
| SUPERMEDIA INC., SUPERMEDIA LLC, SUPERMEDIA SALES INC., SUPERMEDIA SERVICES INC., PETER J. McDONALD, SCOTT W. KLEIN, and JOHN DOE NOS. 1-10, | § | |
| Defendants. | § | |

**JOINT MOTION FOR APPROVAL OF THE SETTLEMENT ON BEHALF OF FLSA COLLECTIVE ACTION MEMBERS**

Edwin Sullivan
State Bar No. 24003024
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email

Allen R. Vaught
State Bar No. 24004966
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
avaught@baronbudd.com – Email

ATTORNEYS FOR PLAINTIFFS

Dan G. Hartsfield
State Bar No. 09170800
Karen E. Griffin
State Bar No. 00796680
Talley R. Parker
State Bar No. 24065872
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, TX 75201
(214) 520-2400 – Telephone
(214) 520-2008 – Facsimile
dan.hartsfield@jacksonlewis.com – Email
griffink@jacksonlewis.com – Email
talley.parker@jacksonlewis.com – Email

ATTORNEYS FOR DEFENDANTS

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. SUMMARY OF SETTLEMENT .......... 3

A. Payments to Settling Plaintiffs. .......... 3

B. Class Notice and Settlement Administration. .......... 4

C. Release Provisions. .......... 5

D. Service Awards. .......... 5

E. Payment Administrator. .......... 6

IV. APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE .......... 6

A. Legal Authority. .......... 6

B. The Settlement Resolves a Bona Fide and Contested Dispute. .......... 7

C. The Proposed Settlement Is Fair and Reasonable. .......... 8

1. The Amount Offered in Settlement is Reasonable. .......... 9

2. The Expense, Complexity, and Duration of Further Litigation. .......... 10

3. The Experience and Views of Counsel. .......... 10

D. Service Awards. .......... 11

E. Attorneys' Fees and Costs. .......... 12

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aros v. United Rentals, Inc.*,
No. 3:10-cv-73 (JCH), 2012 U.S. Dist. LEXIS 104429 (D. Conn. July 26, 2012) ....................7

*Beckman v. Keybank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ....................6

*Bernstein v. Target Stores, Inc.*,
No. 13-cv-01018 NC, 2013 U.S. Dist. LEXIS 154464 (N.D. Cal. Oct. 28, 2013)....................7

*Camp v. The Progressive Corp. et al.*,
No. 01-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004)....................12

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ....................9

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011)....................6

*Escalante v. STX Process Equip., LLC*,
No. C-11-53, 2011 U.S. Dist. LEXIS 85114 (S.D. Tex. Aug. 3, 2011) ....................8

*Hatter v. OB Enters., LLC*,
No. 2:13-CV-1076-TMP, 2014 U.S. Dist. LEXIS 111969 (N.D. Ala. Aug. 13, 2014)....................6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................13

*In re Heartland Payment Sys.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ....................12

*In re Lease Oil Antitrust Litig. (No. II)*,
186 F.R.D. 403 (S.D. Tex. 1999)....................12

*In re M.L. Stern Overtime Litig.*,
No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Oct. 9, 2009) .......12

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ....................8, 9

*Mallin v. Nat'l City Mortg. Inc.*,
No. 05-1499 SC, 2007 U.S. Dist. LEXIS 87213 (N.D. Cal. Nov. 27, 2007) ....................6

*Moore v. Ackerman Inv. Co.*,
No. C 07-3058-MWB, 2009 U.S. Dist. LEXIS 78725 (N.D. Iowa Sept. 1, 2009)....................6

*Murillo v. Texas A&M Univ. Sys.*,
921 F. Supp. 443 (S.D. Tex. 1996) ....................11

*Newby v. Enron Corp.*,
394 F.3d 296 (5th Cir. 2004) ....................6

*Purdie et al. v. Ace Cash Express, Inc. et al*.,
No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 2547 (N.D. Tex. Dec. 11, 2003) ....................12

*Quintanilla v. A & R Demolition, Inc.*,
No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008)....................6, 10

*Silva v. Tegrity Pers. Servs. et al.*,
No. 4:13-cv-00860, 986 F. Supp. 2d 826 (S.D. Tex. 2013)....................12

*Tarlecki v. Bebe Stores, Inc.*,
No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009)....................12

*Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*,
228 F.R.D. 541 (S.D. Tex. 2005)....................10

*Van Vracken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ....................12

*Vela v. City of Houston*,
276 F.3d 659 (5th Cir. 2001) ....................14

**STATUTES**

29 U.S.C. § 216(b) ....................6, 7, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23....................6

Plaintiffs Byron Jones *et al.* (collectively, "Jones Plaintiffs") and Defendants SuperMedia Inc. *et al.* (collectively, "SuperMedia") jointly submit this Motion for Approval of the Settlement on Behalf of FLSA Collective Action Members.

## I.   INTRODUCTION

The parties have agreed to settle the Jones Plaintiffs' claims as well as the claims of those former employees who missed the deadline to opt-in to the present action and later filed a lawsuit styled *Gary Larivee et al. v. SuperMedia Inc. et al.*, which was recently pending in the United States District Court for the Northern District of Texas, Civil Action No. 3:13-cv-00042-B (collectively, "Larivee Plaintiffs").  Under the terms of the parties' agreement, which is set forth in the Notice of Class Action Settlement attached hereto at Exhibit 1 (the "Agreement" or "Notice"), the claims of the Jones Plaintiffs and the Larivee Plaintiffs were settled for a total gross amount of $3 million.  Of that total, the Jones Plaintiffs' proceeds reflect $2,804,449.34 in damages and fees.

For all the reasons set forth below, the settlement is fair, reasonable, and adequate.  The settlement also meets all requirements for approval.  Pursuant to the terms of the Agreement, the parties request that the Court approve the Jones Plaintiffs' settlement as fair and reasonable.

## II.   STATEMENT OF FACTS

This wage and hour action was filed against SuperMedia more than three years ago on behalf of current and former non-exempt, inside sales representatives known as media consultants who alleged they were not paid overtime. On March 23, 2012, the Court conditionally certified a nationwide "off-the-clock" collective action based on the allegations in Plaintiffs' Amended Complaint (doc. 8) and authorized notice to the class of approximately 1,700 current and former employees who worked as media consultants at SuperMedia anytime between January 1, 2010 and June 18, 2012 (doc. 41).

Following conclusion of an extended notice period, approximately 314 individuals ultimately returned consent to join forms, which were filed with the Court. Each Plaintiff consented to be a party plaintiff and agreed "to be bound by the outcome of this proceeding." (*See*, e.g., doc. 9.) Each Plaintiff also signed an attorney contingency fee agreement authorizing a 40% contingency fee after case expenses. (Exh. 2 at ¶ 13) (Affidavit of Edwin Sullivan). Thirty-four of the 314 Plaintiffs refused to participate in the prosecution of this case after signing a consent form and this Court permitted Plaintiffs' counsel to withdraw as their attorneys.[1]

SuperMedia asserted numerous defenses in the litigation, both as to collective action status and as to liability. SuperMedia filed its Motion to Decertify FLSA Collective Action on February 24, 2014 (doc. 133). In its motion, SuperMedia argued that the opt-in plaintiffs were not similarly situated and that no nationwide decision, policy, or plan permitted or encouraged off-the-clock work and/or uncompensated overtime. SuperMedia further argued that decertification was required because defenses individual to each plaintiff precluded collective treatment. The parties resolved the matter before the Court ruled on SuperMedia's motion, and the uncertainty regarding the Court's eventual ruling was considered by the parties as part of the settlement.

The parties first mediated this case on November 12, 2013 with mediator Beth Krugler and then resumed mediation on July 29, 2014 with mediator Judge Glen Ashworth (Ret.). After adjourning the day-long second mediation session, the parties and mediator continued to engage

[1] As explained below, the parties have allocated $100 to each of the 34 Plaintiffs who refused to cooperate with Plaintiffs' counsel, refused to answer discovery questions, and otherwise did not participate in this matter. Plaintiffs' counsel sent the Notice to each of these 34 individuals via certified mail to their last known addresses. (Exh. 3 at ¶¶ 2-3) (Affidavit of Matthew Yezierski). Plaintiffs' counsel has not accepted any percentage of their recovery. (Exh. 2 at ¶ 14.) None of those Plaintiffs (or anyone else) has objected to this settlement. (Exh. 3 at ¶ 10.)

in negotiation and ultimately resolved the matter on August 4, 2014 and agreed to the terms set forth in the Agreement.

In short, the settlement of this matter was complex, at arm's length, and between sophisticated employment lawyers and parties.

## III. SUMMARY OF SETTLEMENT

The parties have agreed to settle the wage and hours claims of the Jones Plaintiffs. The terms of the Agreement are summarized as follows and are also set forth in the attached Notice. (*See* Exh. 1.)

### A. Payments to Settling Plaintiffs.

With regard to the settlement terms, a $3 million settlement fund will be created after approval by this Court, inclusive of the Jones Plaintiffs' and Larivee Plaintiffs' attorneys' fees, litigation expenses and costs, and other costs of the settlement other than SuperMedia's portion of payroll taxes. The vast majority of the Jones Plaintiffs and the Larivee Plaintiffs will receive a proportionate share of the settlement fund according to a formula based on the length of each person's tenure. (Exh. 1.)[2]

The Notice sent to the Jones Plaintiffs fully discloses each Plaintiff's designated settlement amount, as well as everyone else's designated settlement amounts (including the designated settlement amounts in the *Larivee* case). (Exh. 1 at Exs. A-B.) Further, the designated settlement amounts in the Notice were broken down into sub-designations for unpaid overtime, liquidated damages, and attorneys' fees and costs, so every Jones Plaintiff has been sent Notice fully apprizing them of the settlement terms.

[2] The formula was deviated from for some Plaintiffs for the following reasons. First, the four class representatives each received a $5,000 service award in addition to the formula. Second, one Plaintiff did not receive a payment based on a formula and instead received a payment of $100 because of her limited tenure with SuperMedia. Third, the 34 Plaintiffs who refused to participate in discovery of this case after returning an opt-in form received $100 each.

Specifically, the total available settlement funds (less any enhancement payments to the named plaintiffs in *Jones*) have been divided by the total number of workweeks worked by all of the named plaintiffs in *Larivee* and *Jones* and the opt-in members in *Jones* during the relevant time period (i.e., January 1, 2010 to the date the named plaintiffs in *Larivee* and *Jones* filed suit and to the date that the opt-in members in *Jones* filed their consent notices), to determine a gross per week settlement amount. The gross settlement share made available for each named plaintiff in *Larivee* and *Jones* and each opt-in member in *Jones* was then determined by multiplying the per week settlement payment by the number of workweeks worked by that named plaintiff or opt-in member. Excluding the individuals described in footnote 2, supra, the average gross per capita recovery (excluding attorneys' fees) will be approximately $5,848.

Given the vagaries of the Jones Plaintiffs' claimed time, the difficulties inherent in establishing off-the-clock time worked by any method of exact precision, and the difficulties of asking jurors to determine the number of hours worked by Plaintiffs on a person-by-person basis for a three-year period of time, the parties agree that this is a fair and efficient method of calculating each named plaintiff and opt-in member's pro rata share of the settlement funds.

**B. Class Notice and Settlement Administration.**

Although not required by law, the parties outlined an objection procedure for the Jones Plaintiffs. Plaintiffs' counsel then sent the Notice, along with the objection procedure, to the Jones Plaintiffs via certified mail. (Exh. 3 at ¶¶ 2-3.) For any return made by the postal service, a large-scale effort was made to locate new addresses and to update contact information for all 314 persons. (Exh. 3 at ¶¶ 2-9 (affidavit detailing efforts).) The parties believe that approximately 301 of the 314 Plaintiffs (including 277 of the 280 represented Plaintiffs) have received the Notice.

The Jones Plaintiffs were advised that any objections to the settlement must be received by the Plaintiffs' counsel no later than 30 days, or October 20, 2014, after the Notice was first mailed to the Jones Plaintiffs. The time has now passed for receipt of objections (including the passage of more than three days for mailing), and no objections were received. (Exh. 3 at ¶ 10.)

The Jones Plaintiffs will have 90 days from the date of original issuance to cash their settlement checks. All checks issued to the Jones Plaintiffs by SuperMedia shall remain valid and negotiable for 90 days from the date of their original issuance and shall thereafter automatically be cancelled if not cashed by the settling party within that time, at which time the settling party's right to recover any settlement award will be deemed void and of no further force and effect.

**C. Release Provisions.**

All Jones Plaintiffs will be bound by the final approval order, the judgment, and the releases set forth in the Notice. The back of checks will include language re-confirming the release of claims as specified in the Agreement. The Jones Plaintiffs are not providing a full release; merely a release that covers the claims in this lawsuit or that would reasonably arise out of the acts alleged in this lawsuit.

**D. Service Awards.**

The parties have agreed that named plaintiffs Byron Jones, Fred Jones, James Jackson, and Kenneth Todd Boston will each receive a service payment of $5,000 in recognition of their roles in this litigation, participation as lead named plaintiffs, bearing risks on behalf of the opt-in plaintiffs, and assisting Plaintiffs' counsel on numerous occasions. These amounts shall be in addition to these Plaintiffs' shares from the available settlement funds. The service payments shall be paid out of and deducted from the available amount of up to $3 million.

### E. Payment Administrator.

The parties have designated $15,568.15 to pay a third-party to administer the payment of the designated settlement amounts to the 314 Plaintiffs.

## IV. APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A. Legal Authority.

The decision to approve a class action settlement is left to the district court's sound discretion. *Newby v. Enron Corp.*, 394 F.3d 296, 300 (5th Cir. 2004). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *See Quintanilla v. A & R Demolition, Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *6-7 (S.D. Tex. May 7, 2008).

Federal courts routinely approve similar settlements reached in FLSA collective actions. *See, e.g., Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) (approving settlement of overtime claims asserted by 1735 collective action members for $4.9 million); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011); *Mallin v. Nat'l City Mortg. Inc.*, No. 05-1499 SC, 2007 U.S. Dist. LEXIS 87213 (N.D. Cal. Nov. 27, 2007). Unlike settlements under Fed. R. Civ. P. 23, FLSA settlements are not subject to a two-stage process of preliminary approval followed by final approval, and no final fairness hearing is required. *Hatter v. OB Enters., LLC*, No. 2:13-CV-1076-TMP, 2014 U.S. Dist. LEXIS 111969, at *1-2 (N.D. Ala. Aug. 13, 2014) ("[T]he court concludes that it can assess the reasonableness and adequacy of the proposed settlement on the basis of the papers before the court, without the necessity of a hearing."); *Moore v. Ackerman Inv. Co.*, No. C 07-3058-MWB, 2009 U.S. Dist. LEXIS 78725, at *6 (N.D. Iowa Sept. 1, 2009) (explaining that 29 U.S.C. § 216(b) "does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule requirements are not directly applicable to a

collective action pursuant to § 216(b).”). However, Court approval of this collective action settlement remains necessary to effectuate a valid and enforceable release of the Jones Plaintiffs’ FLSA claims. *See, e.g.*, *Bernstein v. Target Stores, Inc.*, No. 13-cv-01018 NC, 2013 U.S. Dist. LEXIS 154464, at *1 (N.D. Cal. Oct. 28, 2013) (“Because the settlement involves a release of claims under the Fair Labor Standards Act and thus requires the Court’s approval, . . .”); *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 U.S. Dist. LEXIS 104429, at *6 (D. Conn. July 26, 2012) (“FLSA settlements generally require judicial approval to be effective, because private settlements will not effectuate a valid release.”).

**B. The Settlement Resolves a Bona Fide and Contested Dispute.**

In this case, the settlement was the result of vigorous arm’s length settlement negotiations. The case had been litigated for over three years. During the entire process, both the Jones Plaintiffs and SuperMedia were represented by counsel experienced in wage and hour law. Accordingly, the Agreement resolves a clear and actual dispute under circumstances supporting a finding that it is fair and reasonable.

Before and after the Court conditionally certified this case as a collective action, the parties engaged in reciprocal written discovery, including both interrogatories and the production of more than 55,000 documents by SuperMedia. Lead counsel for the Jones Plaintiffs also conducted in-depth interviews with the opt-in plaintiffs concerning the claims of the collective action members and the defenses asserted by SuperMedia; reviewed SuperMedia policies related to the pay practices for media consultants and the payment of overtime; and analyzed comprehensive personnel, payroll, and compensation data relating to the damages sustained by individual opt-in plaintiffs.

The motion practice on behalf of the collective action was complicated and hard fought. At the time of the settlement, challenges to certification were pending and remained ripe for

Court resolution. In addition, critical questions were always at issue, including the availability of witnesses (or lack thereof), the proper calculation of the regular rate of pay, the use of representative testimony at trial (if the case was not decertified), and the prosecution of individual claims (if the case was decertified). (Exh. 2 at ¶ 16.)

In short, this long-fought case reflects a bona fide dispute in a contested litigation and, as such, the settlement enjoys a presumption of fairness. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Escalante v. STX Process Equip., LLC*, No. C-11-53, 2011 U.S. Dist. LEXIS 85114, at *1 (S.D. Tex. Aug. 3, 2011) ("Where a settlement in an FLSA case reflects a reasonable compromise over issues in dispute, a court should approve the settlement in order to promote the policy of encouraging settlement of litigation.") (internal citations omitted).

**C. The Proposed Settlement Is Fair and Reasonable.**

The second prong of the Court's settlement approval inquiry focuses on the fairness and reasonableness of the proposed settlement. As explained below, the settlement meets the criteria for approval.

This settlement was the product of arm's-length negotiations by experienced counsel and provides substantial and immediate relief to the Jones Plaintiffs and eliminates the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. A mediation conducted over two days, months apart, with two different qualified mediators ultimately allowed the parties to bridge the significant gaps between the parties' settlement positions and obtain the resolution described above. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Moreover, consideration of several additional factors confirms that the proposed settlement is fair and reasonable.

***1. The Amount Offered in Settlement is Reasonable.***

By any objective measure, the compensation this settlement makes available to the Jones Plaintiffs is favorable and provides the collective action members reasonable consideration for their alleged claims. The settlement brings the Jones Plaintiffs significant monetary value *now*, not years from now, and provides certainty about the outcome. Further, the average per capita gross compensation of approximately $5,848 provides a meaningful recovery. This is not a case where the benefit to the class is largely injunctive or of modest value. And, not a single Plaintiff has objected to the settlement. (Exh. 3 at ¶ 10.)

Here, the parties disputed the proper calculation of the regular rate of pay, and the hours of estimated time worked by the Jones Plaintiffs varied greatly. (Exh. 2 at ¶ 16.) A formula ensures a fair distribution of the settlement fund. In addition, the parties also disagreed with whether a three-year or two-year statute of limitations applies, as well as whether liquidated damages would be recoverable by the Jones Plaintiffs. *Id.* Yet, each Plaintiff, even those approximately 80 Plaintiffs with claims only in the third year of the statute of limitations, recovered money and liquidated damages. *Id.*

Although the maximum possible award at trial could be larger than the settlement amount, it could also be lower, or non-existent. The inquiry as to whether a settlement is reasonable examines the benefits of the settlement in light of the risks of establishing liability and damages. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (affirming a district court's approval of a settlement after properly comparing the settlement amount and "the likely rewards the class would have received following a successful trial of the case"); *Tittle v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 228 F.R.D. 541 (S.D. Tex. 2005) (approving a settlement amount below the possible recovery amount); *Quintanilla*, 2008 U.S. Dist. LEXIS 37449 (finding settlement of FLSA claims for a percentage of the claimed

damages to be reasonable in light of uncertainties involved in the litigation). Here, all parties believe that the settlement amount is a fair evaluation of the Jones Plaintiffs' claims.

***2. The Expense, Complexity, and Duration of Further Litigation.***

This case is complex, could have become much more complex, and carried significant risks for the parties as to both legal and factual issues. There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended. The individual nature of the defenses raised by SuperMedia would have created additional challenges. And, trial preparation for a class of hundreds of opt-ins would have been costly. Finally, it is very likely that in the event the Jones Plaintiffs were to prevail at trial, SuperMedia would appeal such a result. It is safe to assume that trial preparation, trial and post-trial litigation would consume years more effort before there would be finality in this litigation that dates back to 2011.

***3. The Experience and Views of Counsel.***

The experience of the parties' respective counsel in litigating and negotiating complex wage and hour disputes likewise strongly favors approving the settlement. The involvement of experienced counsel and the fact that the settlement agreement was reached in arm's-length negotiations, after a "long, hard-fought mediation" creates a presumption that the agreement is fair. *Quintanilla*, 2008 U.S. Dist. LEXIS 37449, at *11. Although the Court is not bound by counsels' opinion, their opinion is nonetheless entitled to great weight. *See Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996) (explaining that courts should not substitute their judgment for that of counsel, absent evidence of fraud or overreaching). The FLSA collective action had the benefit of attorneys on both sides who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated settlements in other complex litigation cases, including class and collective action settlements.

In the view of lead counsel, the settlement provides substantial benefits to the Jones Plaintiffs, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in the experience of lead counsel, when evaluated against the risks and compared with similar litigation, the relief to the class is substantial. Because this settlement is fair, adequate, and eminently reasonable, it should be approved.

**D. Service Awards.**

In recognition of their service, their assistance in prosecuting the case, their participation in written discovery, their availability for multiple questions by counsel, and by their participation in settling the case, the parties have designated service awards of $5,000 to named plaintiffs Byron Jones, Fred Jones, James Jackson, and Kenneth Todd Boston. All service awards were fully disclosed to the Jones Plaintiffs (Exh. 1), and no Jones Plaintiff objected to these payments. (Exh. 3 at ¶ 10.) The four class representatives greatly assisted Plaintiffs' counsel by answering "many questions, assisted [Plaintiffs' counsel] with the mediations of this matter, made themselves available … at inopportune times, and significantly helped [Plaintiffs' counsel] better understand the facts of this case." (Exh. 3 at ¶ 11.)

The proposed service awards are fair and reasonable. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts commonly permit payment to class representatives above the amounts received by class members generally). "When determining [service] awards, courts may consider a variety of factors, including risks to class representatives in commencing the suit, personal difficulty encountered by class representatives, the amount of time and effort spent by class representatives, and the personal benefit enjoyed by representatives as a result of the litigation." *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *14 (N.D. Cal. Nov. 3, 2009) (citing *Van Vranken v. Atl.*

*Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)); *see also Silva v. Tegrity Pers. Servs. et al.*, No. 4:13-cv-00860, 986 F. Supp. 2d 826, 838 (S.D. Tex. 2013) (stating that the purpose of service awards is to compensate plaintiffs for specific expenses and sacrifices).

In *Purdie et al. v. Ace Cash Express, Inc. et al.*, the Court approved $16,665 in service awards to three class representatives for "me[eting] with Class Counsel from time to time to assist in the prosecution of their cases." No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *25 (N.D. Tex. Dec. 11, 2003). Further, awards, as the ones sought here, are warranted when the representatives have spent a significant amount of time assisting counsel and participating in the discovery process. *See, e.g., In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Oct. 9, 2009) (awarding class representatives $15,000 each); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving awards of up to $10,000 per class representative); *Camp v. The Progressive Corp. et al.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) (approving service awards to the class representatives in the amount of $10,000 each).

The requested service awards are a fraction of the $3 million settlement fund in this case – together totaling only 0.006% of the settlement fund. Without the active named plaintiffs' participation in this case, the FLSA collective action and resulting settlement would have been far less likely. (Exh. 3 at ¶ 11.) The total settlement fund here easily demonstrates the substantial benefits the named plaintiffs have brought to the collective action members as a whole and justifies service awards.

**E. Attorneys' Fees and Costs.**

Pursuant to 29 U.S.C. § 216(b), the Jones Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses. In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's

fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Plaintiffs' counsel—experienced labor and employment lawyers—dedicated a substantial amount of time and labor to this case. (Exh. 2 at ¶ 15.) "Defendants sent detailed discovery to 280 Plaintiffs, including Interrogatories and Requests for Production. The motion practice was complex and time-consuming. Preparing multiple damage models with several different contingencies proved difficult (for example, multiple models with different rates of pay for every person, different weeks worked, different calculations for the regular rate of pay, and different calculations based on claimed hours were created)." *Id.* The litigation of this case also precluded work on other matters. *Id.*

The proposed settlement allocates $1,146,864.28 to the Plaintiffs' counsel for reasonable attorneys' fees and expenses. The designated settlement reflects a 40% contingency fee less expenses. Each of the 280 Jones Plaintiffs represented by counsel signed a 40% less expenses contingency fee contract with Plaintiffs' counsel, which is customary in this jurisdiction. (Exh. 2 at ¶ 13.) The Fifth Circuit has acknowledged by favorably citing a district court opinion that "the customary contingency is likely to have been more like 35 to 40 percent." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (quoting the district court approving a contingency fee).

Regardless of the contingency fee, through October 21, 2014, in the *Jones* matter, Plaintiffs' counsel actually spent $39,056.25 in expenses and incurred $1,093,418.75 in reasonable and necessary attorneys' fees. (Exh. 2 at Exs. A-B, E-F.) Detailed, reasonable, and necessary billing entries in tenths of an hour are provided. *Id.* So, the time worked in the *Jones* case alone demonstrates the reasonableness of the fee and expenses. Taking the *Larivee* matter

into account, there is about a $4,000 difference between actual time and expenses and the designated settlement amount.[3] More time will be expended in the weeks ahead during the settlement process, and Plaintiffs' counsel expects that the designated attorneys' fees and expenses amount will be less than the time actually recorded and spent when this case concludes.

The proposed settlement also allocates an additional $15,568.15 in administrative costs of the settlement, as provided in the Notice. SuperMedia has not objected to and does not oppose such amounts.

## V. CONCLUSION

For the foregoing reasons, the parties request that the settlement be approved.

[3] Total expended costs and fees in *Jones* and *Larivee* total as follows: $39,463.62 in expenses; $1,177,156.25 in fees. The total is $1,216,619.87. The total $3 million proposed settlement allocates $1,220,467.65 for Plaintiffs' reasonable attorneys' fees and costs. Plaintiffs' counsel expects to actually exceed the designated amount during the settlement process, but will not seek those additional fees from the Plaintiffs. (Exh. 2 at ¶¶ 12, 16.) In addition, $3,077.50 in expenses incurred by Plaintiffs' counsel after September 1, 2014 has not been charged to Plaintiffs. (Exh. 2 at ¶ 13.)

Respectfully submitted,

s/ Edwin Sullivan
Edwin Sullivan
State Bar No. 24003024
OBERTI SULLIVAN LLP
723 Main Street, Suite 340
Houston, TX 77002
(713) 401-3555 – Telephone
(713) 401-3547 – Facsimile
ed@osattorneys.com – Email

Allen R. Vaught
State Bar No. 24004966
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
avaught@baronbudd.com – Email

ATTORNEYS FOR PLAINTIFFS

Respectfully submitted,

/s/ Dan G. Hartsfield
Dan G. Hartsfield
State Bar No. 09170800
Karen E. Griffin
State Bar No. 00796680
Talley R. Parker
State Bar No. 24065872
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, TX 75201
(214) 520-2400 – Telephone
(214) 520-2008 – Facsimile
dan.hartsfield@jacksonlewis.com – Email
griffink@jacksonlewis.com – Email
talley.parker@jacksonlewis.com – Email

ATTORNEYS FOR DEFENDANTS